IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:19-cr-81 |
| Plaintiff, | : | Judge Matthew W. McFarland |
| v. | : | |
| ANTHONY RATTINI, et al., | : | |
| Defendants. | : | |

---

**ORDER DENYING DEFENDANT SAMUEL R. BALLENGEE'S MOTION IN LIMINE TO EXCLUDE OR LIMIT TESTIMONY AND OPINIONS OF GOVERNMENT'S PHARMACY EXPERT (Doc. 76)**

---

This case is before the Court on Defendant Samuel R. Ballengee's Motion in Limine to Exclude or Limit Testimony and Opinions of Government's Pharmacy Expert (Doc. 76). The Government filed a memorandum in opposition (Doc. 85) to the Motion, making this matter ripe for review. For the reasons below, the Motion is **DENIED**.

**I.   FACTS**

The one-count Indictment alleges that, from January 2008 through December 2015, a pharmaceuticals distributor, Miami-Luken, conspired with two pharmacists (and the pharmacies they each individually owned and operated) to distribute oxycodone and hydrocodone outside the scope of professional practice and not for a legitimate medical purpose in violation 21 U.S.C. §§ 841 and 846. Defendants allegedly engaged in the conspiracy to profit from the unlawful distribution and dispensation of controlled

substances, including distributing and dispensing large amounts of opioids to known pill mills, and facilitating the diversion of oxycodone and hydrocodone for illicit use.

Defendant Samuel R. Ballengee is a pharmacist licensed in the State of West Virginia who owned and operated Tug Valley Pharmacy in Williamson, West Virginia. Tug Valley Pharmacy purchased controlled substances from Miami-Luken for sale to its customers.

Although neither party has provided the Court with the expert report at issue, the Court understands from the parties' briefing that the Government intends to introduce Dr. Donald Sullivan, a pharmacy professor at The Ohio State University, to offer his opinion as to whether the prescriptions filled by Mr. Ballengee were issued for a legitimate medical purpose and issued in the usual course of professional practice. In preparing his report and forming his opinion, Mr. Bellengee asserts that Dr. Sullivan only reviewed three sets of documents: (1) West Virginia Controlled Substances Dispenser Report for Tug Valley Pharmacy for 2013; (2) IMS Data – Controlled Substance Report for West Virginia, Kentucky, Tennessee, and Ohio; and (3) Tug Valley Pharmacy ARCOS Purchases-Summary Years 2007-2016.[1] (Defendant's Memorandum in Support ("MIS"), Doc. 77, Pg. ID 326.) Based on this data, Dr. Sullivan concluded "that many of these prescriptions filled by Tug Valley Pharmacy were not for a legitimate medical purpose to patients who were abusing and/or diverting them . . . A reasonable and prudent pharmacist would not have dispensed many of those prescriptions." (*Id.*) (quoting Dr.

---

[1] The Government does not take issue with this assertion, and so the Court accepts it as true.

2

Sullivan's Report). Mr. Bellengee contends that Dr. Sullivan's conclusion is primarily based on "red flags" such as the dosages and combinations of certain controlled substances. (*Id.*) Dr. Sullivan also opines that "at least nine of the prescribing physicians were operating 'pill mills,'" a conclusion he asserts Mr. Ballengee should have also reached. (*Id.*) However, Dr. Sullivan did not review the medical charts of the patients who presented prescriptions from those nine alleged "pill mills." (*Id.* at Pg. ID 327.)

The Government notes that Dr. Sullivan is expected to testify that "the amount of hydrocodone purchased by [Tug Valley Pharmacy] in a town of 3191 people over 2007-2015 was extraordinary and unlike [anything] he has ever seen." (Government's Memorandum in Opposition ("MIO"), Doc. 85, Pg. ID 708.) The Government also details certain practices noted by Dr. Sullivan and indicates that Dr. Sullivan "will explain why all of these along with other things he observed [through] the records are clear signs of abuse and diversion." (*Id.* at Pg. ID 709.)

## II. LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony, providing that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise, if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> > (b) the testimony is based on sufficient facts or data;
> > (c) the testimony is the product of reliable principles and methods; and
> > (d) the expert has reliably applied the principles and methods to the facts of the case.

3

The Court's role under these circumstances is to act as a gate keeper, ensuring that only expert testimony that is relevant and reliable is admitted. *See Daubert v. Merrill Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993). Its objective "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). The Court enjoys broad discretion in determining whether the factors listed in *Daubert* reasonably measure reliability in a given case. *Id.* at 153. Additionally, the testimony must also be relevant. *Daubert*, 509 U.S. at 589.

### III. ANALYSIS

In this Motion, Mr. Ballengee moves to exclude the Government's pharmacy expert, Dr. Donald Sullivan, under Rule 702(b), contending that his opinion is not based on sufficient facts or data. Mr. Ballengee recognizes that Dr. Sullivan is a "respectably well-credentialed pharmacy professor at The Ohio State University," (Defendant's MIS, Doc. 77, Pg. ID 326), but he challenges the admissibility of Dr. Sullivan's opinions because he asserts that Dr. Sullivan did not review the medical charts of the patients presenting prescriptions to be filled. (*Id.* at Pg. ID 326-27.) Thus, Mr. Ballengee argues that Dr. Sullivan did not know "the patients' medical history, physical examinations, lab and text results, other diagnostic tools used, diagnoses, treatment and treatment plans, course of treatment, and whether the patients were subjected to drug screening, pain management contracts, pill counts and other procedures common to medical practices treating pain or

4

chronic pain patients." (*Id.* at Pg. ID 327.) He also contends that the testimony embraces the ultimate issue and thus removes it from the jury's purview, where it belongs.

In response, the Government argues that Mr. Ballengee's arguments go to the weight of Dr. Sullivan's testimony, not its admissibility. (Government MIO, Doc. 85, Pg. ID 705.) The Government contends that neither the Federal Rules of Evidence nor *Daubert* requires that the expert's assessments be proven unassailably correct before they can be introduced to the jury—only that they are reliable and relevant. (*Id.* at Pg. ID 705-06.) The Government asserts that Dr. Sullivan will describe his review of the pertinent doctors and their prescribing habits, which will show obvious red flags of diversion that Mr. Ballengee should have recognized immediately—and the jury can decide how much to credit Dr. Sullivan's testimony.

Because Mr. Ballengee does not challenge Dr. Sullivan's credentials, the question before the Court is limited to whether Dr. Sullivan's opinions are sufficiently reliable, even without his review of the underlying patient files, such that they should be admitted at trial and whether Dr. Sullivan's opinion usurps the role of the jury by opining as to the ultimate issues in the case. The short answer is that Dr. Sullivan's opinions are admissible, for the reasons that follow.

"Expert testimony on whether prescriptions are medically appropriate has long been the norm in controlled-substance prosecutions." *United States v. Lang*, 717 F. App'x 523, 534 (6th Cir. 2017). And the Sixth Circuit has expressly held that medical expert opinions that prescriptions issued by a physician had no legitimate medical purpose did not invade the province of the jury. *United States v. Volkman*, 797 F.3d 377, 389-90 (6th Cir.

5

2015). Indeed, that Court also upheld the testimony of a medical doctor and pharmacist on "the standard of care and the evaluation of certain drug combinations or quantities," finding that "both experts applied their understanding of the standard-of-care to a limited sample of the facts." *Id.* at 390.

Here, Dr. Sullivan's opinions are admissible because they are sufficiently relevant and reliable to be helpful to the jury members. As an initial matter, because the Government must necessarily prove "what the medical professional would generally do in the circumstances" to obtain a conviction under § 841(a), *see United States v. Quinones*, 536 F. Supp. 2d 267, 274 (E.D.N.Y. 2008), Dr. Sullivan's opinion as to what facts or circumstances should have alerted Mr. Ballengee to potentially illegitimate actions is clearly relevant. Indeed, a jury is unlikely to have the knowledge to decipher whether prescriptions may be deemed typical or may be concerning to a pharmacist and why. Thus, this testimony is certainly relevant and helpful to a jury's determination of the charged offense.

Further, Dr. Sullivan's testimony is sufficiently reliable to be helpful to the jury, even though he did not review the underlying patient files when forming his opinions. First, Defendant cites no authority, nor did the Court uncover any, requiring that a medical expert in a controlled substances case review all underlying patient files. In fact, at least one case recognized that an expert may testify as to standard of care and the combinations of certain drugs or drug quantities, even without testifying as to the propriety of specific prescriptions. *See Volkman*, 797 F.3d at 390 (recognizing that, even when an expert was not asked about specific prescriptions, the expert was permitted to

testify as to "the standard of care and the evaluation of certain drug combinations or drug quantities").

Second, medical expert testimony is appropriate to inform the jury whether the conditions or circumstances at clinics (based on evidence introduced at trial) were medically appropriate or within the scope of legitimate medical practice. *See United States v. Hofstetter*, No. 3:15-CR-27-TAV-DCP, 2019 WL 4065673, *6 (E.D. Tenn. Aug. 28, 2019). This information, the behavior of the medical doctors and practices, is relevant to a pharmacist's conduct, because the pharmacist is not presented with the patient file—only the prescription. Thus, it is the pattern of prescriptions and prescribing doctors, among other things, that informs a pharmacist's decision whether to fill the prescription. Accordingly, the fact that Dr. Sullivan did not review the underlying patient files does not render his opinion unreliable so as to require exclusion.

Moreover, Mr. Ballengee can challenge the basis for Dr. Sullivan's opinions, and the fact that he did not review the patient files, on cross examination. The scope and thoroughness of Dr. Sullivan's review goes to the weight, not the admissibility, of Dr. Sullivan's testimony.

**IV.    CONCLUSION**

For the reasons above, Defendant Samuel R. Ballengee's Motion in Limine to Exclude or Limit Testimony and Opinions of Government's Pharmacy Expert (Doc. 76) is **DENIED**.

7

**IT IS SO ORDERED.**

                                          UNITED STATES DISTRICT COURT
                                          SOUTHERN DISTRICT OF OHIO

                                   By: _____
                                          JUDGE MATTHEW W. McFARLAND